**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re Application of **VR CAPITAL GROUP LTD.** for an Order to Conduct Discovery for Use in Foreign Proceedings.<br><br>Petitioner. | ) | Case: 1:26–mc–00140<br>Assigned To : Cobb, Jia M.<br>Assign. Date : 9/29/2026<br>Description: Misc.<br><br>Misc. Action No. ____________ |

**APPLICATION FOR DISCOVERY IN AID OF FOREIGN LITIGATION PURSUANT TO 28 U.S.C. § 1782**

Petitioner VR Capital Group Ltd. ("**VRCG**" or the "**Petitioner**") makes this application (the "**Application**") for an order pursuant to 28 U.S.C. § 1782 authorizing its attorneys to issue a subpoena, pursuant to Federal Rule of Civil Procedure 45, upon Respondent Jason Levien ("**Mr. Levien**" or the "**Respondent**"), compelling the Respondent to produce documents and provide a deposition in the District of Columbia for the use of such evidence in the foreign legal proceeding styled *VR Capital Group Ltd. v. Endvr-MTA LLC, et al.*, Case No. 59352-09-26, currently pending in the District Court of Tel Aviv-Yafo, Israel (the "**Israeli Proceeding**").

## I. INTRODUCTION

**1.** VRCG is a company incorporated under the laws of the Cayman Islands with its registered office at One Nexus Way, Camana Bay, Grand Cayman Cayman Islands KY1-9005, Cayman Islands. (*See* Ex. A, Declaration of Richard Deitz ("**Deitz Declaration**"), ¶ 4.) VRCG holds approximately 17.5% of the shares of Maccabi Tel Aviv Basketball Club (1995) Ltd. ("**Maccabi**" or the "**Club**"), a professional basketball club based in Tel Aviv, Israel. (*See* Deitz Declaration, ¶ 5.)

RECEIVED
SEP 29 2026
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

**2.** On June 9, 2013, VRCG, Naftali Sh.Sh. Investments Ltd. ("**Naftali**"), Newco Sport Ltd. ("**Newco**"), Fedanco Sport Ltd. ("**Fedanco**"), and Maccabi Tel Aviv Holdings LLC ("**MTAH**") entered into a Shareholders Agreement governing the Club (the "**Shareholders Agreement**" or the "**Agreement**"). (*See* Deitz Declaration, ¶ 7 & Exhibit 1 attached thereto.)

**3.** Pursuant to the Shareholders Agreement, a shareholder such as VRCG has certain contractual rights which safeguard its ownership interest in Maccabi, including without limitation a Right of First Refusal (alternatively, the "**ROFR**") to purchase an existing shareholder's shares of Maccabi upon an intended sale event, prior to a selling shareholder's right to sell shares to a third party. (*See* Deitz Declaration, ¶ 8 & Exhibit 1 attached thereto.)

**4.** Specifically, the Shareholders Agreement contains a comprehensive mechanism governing the transfer of shares in the Club, including such Right of First Refusal pursuant to Section 15.4, general restrictions on share transfers pursuant to Section 15.1, and a limited exception in Section 15.9 permitting transfers of up to 7.5% in the aggregate of the Club's share capital without triggering a shareholder's Right of First Refusal. (*See* Deitz Declaration, ¶ 9 & Exhibit 1 attached thereto.) These provisions were designed to, among other things, protect existing shareholders from the entry of unwanted third parties into the Club's ownership structure. (*See* Deitz Declaration, ¶ 10 & Exhibit 1 attached thereto.)

**5.** In the spring and summer of 2026, Respondent Mr. Levien secretly coordinated with shareholders Naftali and Newco to engineer a series of transactions designed to circumvent VRCG's contractual rights and install Mr. Levien's entity, Endvr-MTA LLC ("**Endvr-MTA**"), a third party, as a shareholder in the Club. The scheme involved a classic "back-to-back" transaction seemingly brokered by Mr. Guy Harel ("**Mr. Harel**"), a citizen of Israel and a defendant in the Israeli Proceeding, in connection with Mr. Levien. (*See* Deitz Declaration, ¶¶

11-12.) Pursuant to this back-to-back transaction, Naftali purchased Fedanco's approximately 29% stake in the Club for $50 million, only to immediately attempt to flip the same block to Endvr-MTA for the same price—all while concealing the terms of the deal and identities of the real buyers from VRCG. (*See* Deitz Declaration, ¶ 13.)

**6.** Despite the efforts of Mr. Levien and others to conceal key information regarding the terms of the proposed transaction from VRCG, VRCG exercised its Right of First Refusal on September 4, 2026, with respect to this transaction. (*See* Deitz Declaration, ¶ 14 & Exhibit 2 attached thereto.) Following that, and in an effort to obviate VRCG's Right of First Refusal, Naftali, Newco, and Mr. Levien pivoted to yet another scheme: an artificially "split" transfer of 7.5% of Naftali's shares to Endvr-MTA, rushed through on the night of September 5, 2026, followed by a notice that purported to treat Endvr-MTA as an existing shareholder entitled to participate in the distribution of the very block of shares that had been improperly "offered" to it as an outside, third-party purchaser (the "**Distribution Notice**") (*See* Deitz Declaration, ¶ 15 & Exhibit 3 attached thereto.) These improper maneuvers were all designed to gut VRCG's exercise notice and fundamentally reshape the Club's ownership structure in violation of VRCG's legal rights. (*See* Deitz Declaration, ¶ 16.)

**7.** The Israeli Proceeding described above ensued. (*See* Deitz Declaration, ¶ 17 & Exhibit 4 attached thereto.)

**8.** 28 U.S.C. § 1782 and its interpretive case law authorize this Court to allow the taking of discovery consistent with the Federal Rules of Civil Procedure to aid a foreign tribunal in its proceedings. "[T]he twin aims of the statute . . . are to provide efficient means of assistance to participants in international litigation in our federal courts and to encourage foreign countries by example to provide similar means of assistance to our courts." *Texas Keystone Inc. v. Prime*

*Natural Resources, Inc.*, 694 F.3d 548, 554-56 (5th Cir. 2012). Those aims can be achieved through this Court's entry of an order allowing VRCG to issue a subpoena to obtain documents from Mr. Levien here in the District of Columbia—where Mr. Levien, an American citizen, resides and can be "found" for purposes of the statute—in aid of the Israeli Proceeding.

**9.** The documents sought are narrowly tailored to the issues in the Israeli Proceeding: communications and documents concerning the Respondent's involvement in the back-to-back transactions, the formation and ownership of ENDVR-MTA, the terms of the transfers, and related matters. Upon information and belief, these documents are located in the United States and are beyond the jurisdictional reach of the Israeli courts. Entry of the requested order would represent a textbook application of 28 U.S.C. § 1782, since it concerns a non-party to the foreign proceeding who lives in the United States—not Israel. Moreover, as shown in the Declaration of Adv. Zohar Lande, Israeli courts would be receptive to such documents and evidence in the Israeli Proceeding. (*See* Ex. B, Declaration of Adv. Zohar Lande ("**Lande Declaration**"), ¶¶ 21-29.)

**10.** As explained in greater detail below, courts have routinely allowed the use of such evidence in foreign proceedings, including in Israel. *See, e.g.*, *In re Hallmark Capital Corp.*, 534 F. Supp. 2d 951 (D. Minn. 2007) (holding that a non-party to the Israeli proceeding located in the United States was required to respond to the petitioner's § 1782 requests and that the discovery sought by petitioner was not unduly broad or burdensome); *In re Application of RSM Production Corp. v. Noble Energy, Inc.*, 95 F. Supp. 3d 899 (S.D. Tex. 2016) (holding that discovery in the United States was appropriate and would aid the Israeli proceedings at issue). The Court should thus grant VRCG's Application in its entirety.

## II. JURISDICTION

**11.** This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under federal law; specifically, 28 U.S.C. § 1782. *See United Co. Rusal PLC v. Trafigura A.G.*, No. 3:11-mc-17 (SRU), 2011 WL 1045532 (D. Conn. Mar. 16, 2011).

## III. FACTUAL BACKGROUND

### A. The Declarations in Support of VRCG's Application

**12.** VRCG's Application is supported by, *inter alia*, the declaration of Mr. Deitz. (*See* Ex. A.)

**13.** Mr. Deitz is the founder and president of VRCG and serves as VRCG's representative on the Club's board of directors. Mr. Deitz is a percipient witness who has direct, first-hand knowledge of the events described herein, including the board of directors meeting of September 4, 2026, the Respondent's involvement in the scheme to circumvent VRCG's legal rights concerning Maccabi, and the concealment of material information from VRCG. (*See* Deitz Declaration, ¶¶ 4, 6.)

**14.** VRCG's Application is also supported by the declaration of Adv. Zohar Lande (*See* Lande Declaration, *ibid*.) (Mr. Lande is alternatively referred to as "**Israeli Counsel**"). Israeli Counsel is a member of the law firm Barnea Jaffa Lande & Co. ("**Barnea**"), which serves as counsel of record for VRCG in the Israeli Proceeding. (*See* Lande Declaration, ¶ 6.) Barnea is a leading Israeli law firm with offices at 58 HaRakevet Street, Tel Aviv-Yafo 6777016, Israel. (*See* Lande Declaration, ¶¶ 2-6.)

### B. The Shareholders Agreement and the Ownership Structure of the Club

**15.** The Club is a professional basketball club based in Tel Aviv, Israel. The Club plays in the Israeli Premier League and internationally in the EuroLeague. Maccabi Tel Aviv is the

most well-known team in Israel and is regarded as one of the best teams in Europe, having won 6 EuroLeague titles since joining, and having sent numerous players to the NBA. The Club was established in the mid-1930s, as part of the Maccabi Tel Aviv Sports Club, which had been founded in 1906. (*See* <https://en.wikipedia.org/wiki/Maccabi_Tel_Aviv_B.C.>). In plain terms, Maccabi Tel Aviv is the Israeli equivalent of the NBA's Los Angeles Lakers or Boston Celtics. This is, therefore, a dispute of significant importance.

**16.** The ownership and governance of the Club is governed by the Shareholders Agreement dated June 9, 2013, entered into by VRCG, Naftali, Newco, Fedanco, and MTAH. (*See* Deitz Declaration, ¶ 7.) The Shareholders Agreement contains a comprehensive and binding arrangement regarding the sale, transfer, or assignment of shares and related rights in the Club. The arrangement is intended to ensure, among other things, that no third party enters the Club's ownership structure without the existing shareholders having the opportunity to examine the proposed transaction and exercise their contractual rights, including their Rights of First Refusal. (*See* Deitz Declaration, ¶¶ 9-10; 18.)

**17.** Section 15.1 of the Agreement provides that a shareholder is not entitled to transfer its shares to a third party except subject to the provisions of the Agreement and with the prior written approval of the board of directors. A transfer to a party that is not a "permitted transferee" is subject, as a general rule, to the Right of First Refusal mechanism set forth in Section 15.4 of the Agreement. (*See* Deitz Declaration, ¶ 19 & Exhibit 1, ¶¶ 15.1 and 15.4, attached thereto.)

**18.** Section 15.4 of the Agreement grants the other shareholders a prior right to purchase shares that a shareholder seeks to transfer to a third party. For this purpose, Section 15.4.1 requires the selling shareholder to provide the other shareholders with a "Selling Notice" that

includes: (a) the identity of the third party; (b) the number of shares and rights offered; (c) the consideration; and (d) "all other terms and conditions" of the sale. Section 15.4.2 provides that within 30 days of delivery of the Selling Notice, any other shareholder may deliver a "Buying Notice" with respect to all the rights offered. (*See* Deitz Declaration, ¶ 20 & Exhibit 1, ¶¶ 15.45.1-15.4.2, attached thereto.)

**19.** Section 15.9 of the Agreement establishes a limited exception to the Right of First Refusal mechanism, under which Section 15.4 does not apply to a sale or transfer of up to 7.5% ***in the aggregate*** of the share capital, transferred to a third party by "one or more" of the shareholders Naftali and Newco (and formerly Fedanco). (*See* Deitz Declaration, ¶ 21 & Exhibit 1, ¶¶ 15.4 and 15.9, attached thereto.)

**C. The Back-to-Back Transaction and Concealment of Material Information**

**20.** During 2026, a dispute arose among the Club's shareholders concerning the ownership structure and future direction of the Club. In May 2026, Fedanco, which held approximately 29% of the Club's shares, announced a planned change of control, which could have led to the entry of a new party into the Club's ownership. (*See* Deitz Declaration, ¶ 22.)

**21.** Naftali objected to the entry of the outside party proposed by Fedanco. However, upon information and belief, Naftali's objection was not motivated by a desire to protect the Club or the existing shareholders, but rather was designed to protect the interests of two third-parties, Mr. Levien and Mr. Harel. In fact, at the very same time Naftali was blocking Fedanco's proposed change of control, Naftali and Newco were secretly conducting advanced negotiations with Mr. Levien and Mr. Harel regarding the entry of Mr. Levien's entity into the Club's ownership structure. Mr. Harel served as the intermediary who facilitated the contacts between Mr. Levien and Naftali/Newco. (*See* Deitz Declaration, ¶ 23.)

**22.** On July 6, 2026—just ***one day*** before Naftali announced its exercise of the Right of First Refusal over Fedanco's shares—Endvr-MTA LLC was formed in the State of Delaware. (*See* Deitz Declaration, ¶ 24.) This timing reveals the coordinated nature of the scheme.

**23.** On July 7, 2026, Naftali announced its intention to exercise its Right of First Refusal over Fedanco's shares. On July 15, 2026, Naftali completed the purchase of all of Fedanco's holdings in the Club (approximately 77,998 shares constituting approximately 29% of the share capital) for a consideration of approximately $50 million. (*See* Deitz Declaration, ¶ 25.)

**24.** Only three weeks later, on August 7, 2026, Naftali issued a "Selling Notice" to the shareholders announcing its intention to sell the *very same block* of 77,998 shares to Endvr-MTA for the *same price* of approximately $50 million. (*See* Deitz Declaration, ¶ 26.) This was a classic back-to-back transaction—the purchase from Fedanco was merely a vehicle for the transfer of shares to Endvr-MTA, a third party who had no right to purchase shares in the absence of VRCG being allowed to exercise its Right of First Refusal. (*See id.*)

**25.** Critically, the Selling Notice omitted material information required by Section 15.4.1 of the Shareholders Agreement. Among other things, Naftali failed to disclose: the identity of the beneficial owners behind ENDVR-MTA; the full terms of the transaction, including ancillary arrangements; payment and completion terms; sources of financing; securities; and undertakings regarding management and voting rights. VRCG demanded that Naftali provide the required information, but Naftali refused, while simultaneously insisting that the 30-day period for exercising the Right of First Refusal was running. (*See* Deitz Declaration, ¶ 27 & Exhibit 6 attached thereto.)

**D. Mr. Recanati's Admissions Regarding the Respondents' Role**

**26.** The coordinated nature of the scheme received dramatic confirmation through a recorded conversation between Mr. Oudi Recanati ("**Mr. Recanati**"), one of Naftali's representatives on the Club's board of directors, and a third party—a transcribed copy of which is attached hereto. (*See* Deitz Declaration, ¶ 28 & Exhibit 7 attached thereto.) In this conversation, Mr. Recanati made a series of material admissions, including:

(a) That Mr. Levien heads a "group of investors" behind ENDVR-MTA;

(b) That Naftali conducted "very in-depth" due diligence on Mr. Levien and the group of investors before the transactions;

(c) That Mr. Levien is "100% with us" and that there is a voting arrangement between Naftali, Newco, and Mr. Levien;

(d) That the purchase of Fedanco's shares was not intended to increase Naftali's holdings, but rather served as a vehicle for the transfer to Mr. Levien;

(e) That Mr. Levien committed to inject an additional $10 million per year into the Club beyond the budget; and

(f) That Mr. Harel mediated the contacts between Mr. Levien and Naftali/Newco.

(*See* Deitz Declaration, ¶¶ 28(a)-(f) & Exhibit 7 attached thereto.)

**27.** These admissions were not disclosed in the Selling Notice and were actively concealed from VRCG, notwithstanding VRCG's repeated demands for the information. (*See* Deitz Declaration, ¶ 29 & Exhibit 8 attached thereto.)

**E. VRCG's Exercise of the Right of First Refusal and the September 5 Scheme**

**28.** Despite the concealment of information, on September 4, 2026—two days before the deadline—VRCG exercised its Right of First Refusal with respect to all the shares offered for sale by Naftali. (*See* Deitz Declaration, ¶ 30 & Exhibit 2 attached

thereto.) Had VRCG's exercise been honored, its aggregate shareholding in the Club would have reached approximately 46.5% of the share capital. (*See id.*)

**29.** However, instead of honoring VRCG's rights, the Respondent Mr. Levien, together with Naftali and Newco, promoted yet another scheme to circumvent the Agreement. On August 31, 2026, Naftali and Newco convened a board of directors meeting for September 4, 2026. (*See* Deitz Declaration, ¶ 31 & Exhibit 9 attached thereto.) The sole agenda item was the approval of a ***joint*** transaction to transfer approximately 14% of the Club's shares to ENDVR-MTA—7.5% from Naftali and 6.5% from Newco—which Naftali and Newco sought to present as falling under the Section 15.9 exception. (*See id.*)

**30.** At the board meeting, VRCG's representative Mr. Deitz strongly objected, clarifying that Section 15.9 permits transfers of only up to 7.5% ***in the aggregate***, not 7.5% per shareholder. Mr. Deitz further noted that given the personal interest of most board members, the transaction required the approval of the general meeting of shareholders. (*See* Deitz Declaration, ¶ 32.)

**31.** When the 14% transaction encountered this obstacle, the plan was "changed" during the meeting. The single transaction was artificially "split," and only the transfer of 7.5% of Naftali's shares to ENDVR-MTA was put to a vote—a transaction that had not been on the original agenda. The discussion on the Newco share transaction was postponed. (*See* Deitz Declaration, ¶ 33.)

**32.** Matters reached their peak on the night of Saturday, September 5, 2026. In rapid succession and with unusual haste, a series of "notices" and "decisions" were sent to VRCG:

***First***, Naftali issued a notice claiming that the transfer of 7.5% of its shares to Endvr-MTA had been lawfully executed and that the previously convened general

meeting was no longer necessary (the "**Transfer Notice**") (*See* Deitz Declaration, ¶ 34.1 & Exhibit 10 attached thereto.)

***Second***, Newco issued a notice purporting to exercise a priority right to purchase 53,770 of the remaining shares—on the erroneous assumption that Naftali's shareholding had already decreased by 7.5% due to the supposed transfer to Endvr-MTA (the "**Exercise Notice**") (*See* Deitz Declaration, ¶ 34.2 & Exhibit 11 attached thereto.)

***Third***, Naftali issued the "Distribution Notice," purporting to treat Endvr-MTA as an *existing shareholder* entitled to participate in the distribution of the 29% block—the very block that had been offered for sale to Endvr-MTA as a third party. The practical effect was to gut VRCG's exercise notice, reduce VRCG's allocation from the full block to a mere fraction, and manufacture a shareholding for Endvr-MTA of over 8%. (*See* Deitz Declaration, ¶ 34.3 & Exhibit 3 attached thereto.)

**33.** This coordinated series of actions—carried out in concert with the Respondents—was designed to create an irreversible "new reality" in the Club's ownership structure, to the detriment of VRCG and in violation of the Shareholders Agreement. (*See* Deitz Declaration, ¶ 35.)

## IV. THE ISRAELI PROCEEDING

### A. The Action in Israel

**34.** As referenced above, Barnea Jaffa Lande & Co., and in particular Adv. Zohar Lande, Adv. Eyal Nachshon, Adv. Shay Bello, and Adv. Shani Tsur, serve as counsel of record for VRCG in the Israeli Proceeding. (*See* Lande Declaration, ¶¶ 2, 6-7.)

**35.** VRCG commenced the Israeli Proceeding against Endvr-MTA LLC and Mr. Harel in the District Court of Tel Aviv-Yafo. (*See* Lande Declaration, ¶ 7.) Mr. Harel is a resident of

Israel, but Respondent Mr. Levien is not; Mr. Levien, instead, is a resident of the District of Columbia in the United States and is thus subject to the jurisdiction of this Honorable Court. (*See* Ex. A, Deitz Declaration, ¶ 40.)

**36.** The Israeli Proceeding asserts claims for inducing breach of contract under Section 62(a) of the Israeli Torts Ordinance, unjust enrichment, and declaratory relief. (*See* Deitz Declaration, ¶ 38 & Exhibit 4 attached thereto.)

**37.** The claims in the Israeli Proceeding arise from the same coordinated scheme described above: the back-to-back transactions, the concealment of material information, the artificial "splitting" of the 14% transaction, and the rushed Transfer Notice and Distribution Notice of September 5, 2026. In the Israeli Proceeding, VRCG seeks, *inter alia*, a declaratory judgment that the share transfers and actions described above were carried out in breach of the Shareholders Agreement and in violation of VRCG's rights, as well as monetary relief for damages caused by the Respondents' tortious conduct. (*See* Deitz Declaration, ¶ 39 & Exhibit 4 attached thereto.)

**B. The Proposed Discovery in Relation to the Israeli Proceedings**

**38.** Mr. Levien does not reside in Israel. Mr. Levien resides in Washington, D.C. where he is the Co-Chairman and CEO of Major League Soccer team DC United. (*See* Deitz Declaration, ¶ 40.) Thus, absent the intervention of this Court, the documents and evidence sought herein would remain beyond the jurisdictional reach of the Israeli courts, including the court in our specific Israeli Proceeding at issue.

**39.** The documents sought from the Respondent, Mr. Levien, go to the very heart of the Israeli Proceeding. Mr. Levien was one of the architects and intermediaries of the scheme to circumvent VRCG's contractual rights in relation to this prestigious basketball club. Mr. Levien

possesses unique and critical evidence regarding: the formation and beneficial ownership of his entity, Endvr-MTA; the terms, conditions, and side arrangements negotiated with Naftali and Newco; the financing of the transactions; and the voting and management arrangements that were concealed from VRCG. (*See* Deitz Declaration, ¶ 41.)

**40.** Moreover, it is the opinion of VRCG's Israeli counsel that obtaining the information sought does not circumvent the proof-gathering restrictions or other policies of the Israeli courts, and that the information sought via document requests would be well received and materially aid the progress and conclusion of the Israeli Proceeding. (*See* Lande Declaration ¶¶ 21-29.)

**41.** Accordingly, all of the factual predicates necessary for the granting of VRCG's Application are solidly established, as set out in greater detail below.

## V. DISCUSSION

**42.** Section 1782 authorizes the third-party discovery that the Petitioner seeks from Mr. Levien, and the discretionary factors weigh heavily in favor of granting Petitioner's Application for discovery.

### A. Legal Standards for Section 1782 Applications

**43.** Section 1782 and its interpretive case law authorize this Court to allow the taking of discovery consistent with the Federal Rules of Civil Procedure to aid a foreign tribunal in its proceedings. "[T]he twin aims of the statute . . . are to provide efficient means of assistance to participants in international litigation in our federal courts and to encourage foreign countries by example to provide similar means of assistance to our courts." *Texas Keystone Inc. v. Prime Natural Resources, Inc.*, 694 F.3d 548, 554-56 (5th Cir. 2012) (citation omitted); *see also In re Bayer AG*, 146 F.3d 188, 191-92 (3d Cir. 1998) (holding that Section 1782 is intended "to facilitate the conduct of litigation in foreign tribunals, improve international cooperation in

litigation, and put the United States into the leadership position among world nations in this respect").

**44.** Federal courts uniformly underscore that Section 1782 "reflects congressional desire to increase the power of district courts to respond to the requests for international assistance." *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1154 (11th Cir. 1988). The Supreme Court has concluded that "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241, 247 (2004).

**45.** Section 1782(a) provides in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and . . . [t]o the extent that the order does not prescribe otherwise, the testimony or the statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

**46.** Thus, three statutory requirements must be met for a grant of assistance under Section 1782: (1) the person from whom discovery is sought must reside or be found in the district; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application must be made by a foreign or international tribunal or "any interested person," which, as here, includes litigants involved in the foreign proceedings. *See* 28 U.S.C. § 1782; *see also Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012); *Pott v. Icicle Seafoods, Inc.*, 945 F. Supp. 2d 1197, 1199 (W.D. Wash. 2013). As emphasized by the Supreme Court in *Intel*,

"[o]nce the statutory requirements are met, a district court is free to grant discovery in its discretion." *Intel*, 542 U.S. at 264; *see also Brandi-Dohrn*, 673 F.3d at 80.

**47.** *Intel* also guides the Court to consider and weigh four discretionary factors: (1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests. *See Intel*, 542 U.S. at 264-65; *see also Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015).

**48.** Section 1782 has been described as a "one-way street" that grants wide assistance to others but demands nothing in return. "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of assistance." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995).

**B. The Petitioner Meets the Three Statutory Requirements of Section 1782**

**49.** The Petitioner easily meets all three statutory requirements under Section 1782.

**50.** ***First***, Mr. Levien resides at 4720 Dexter St. NW, Washington, DC 20007. He is therefore plainly a person who "resides" in this District within the meaning of Section 1782. (*See* Deitz Declaration ¶ 40.) Under Section 1782, this Court may order a person who "resides or is found" in this District to produce documents or provide a deposition. *See* 28 U.S.C. § 1782. Mr. Levien's residence in D.C. satisfies the first statutory requirement. *See Pott*, 945 F. Supp. 2d at 1199.

**51.** ***Second***, the discovery sought satisfies Section 1782's requirement that it be "for use in a proceeding in a foreign or international tribunal" because it will be used in the Israeli Proceeding, which is an adjudicative proceeding before the District Court of Tel Aviv-Yafo, Israel. *See* 28 U.S.C. § 1782; *see also* Lande Declaration, ¶ 7. As said proceedings constitute proceedings before a "foreign tribunal," the second requirement is met. *See Intel*, 542 U.S. at 258.

**52.** ***Third***, Petitioner VRCG, as a ***direct party*** to the Israeli Proceedings, clearly is an "interested person" under Section 1782. As the Supreme Court held in *Intel*, while Section 1782 is not limited to parties to a foreign proceeding, foreign "litigants are included among (and may be the most common example of) the 'interested persons' who may invoke Section 1782." *Intel*, 542 U.S. at 256; *see also Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1110-11 (9th Cir. 2015) (holding that a party to the foreign proceedings has the requisite "reasonable interest" necessary for judicial assistance pursuant to Section 1782).

**53.** Thus, the three statutory requirements of 28 U.S.C. § 1782 are easily satisfied and pose no controversy with respect to this Court's granting of Petitioner's Application for discovery to be used in connection with the Israeli Proceeding.

**C. The Court Should Exercise Its Discretion to Grant the Application**

**54.** Once the three statutory factors are satisfied, the district court should determine, in its discretion, whether to order the requested discovery. *See Intel*, 542 U.S. at 264. Here, all four discretionary factors clearly weigh in favor of granting the Application.

***1. The Israeli Court Lacks Jurisdiction to Compel Discovery from the Respondent, Mr. Levien***

**55.** The first *Intel* factor considers whether the person from whom discovery is sought is a participant in the foreign proceeding such that the foreign tribunal has jurisdiction over that person. *See Intel*, 542 U.S. at 264.

**56.** Here, Mr. Levien is not a party to the Israeli Proceeding. Moreover, he is a citizen of the United States and lives in the United States, not Israel, and thus Israel cannot even compel discovery from him as a third-party witness. This, therefore, represents the classic case for § 1782 discovery: obtaining discovery from a non-party in a foreign proceeding from whom the foreign court cannot compel discovery because that non-party lives outside of its jurisdiction. *See, e.g.*, *In re Application of Accent Delight Int'l Ltd.*, 869 F.3d 121 (2d Cir. 2017); *In re Webuild S.p.A.*, 2021 WL 4133700 (D.D.C. Sept. 10, 2021).

**57.** The critical point here is that the documents and other evidence sought are located in the United States—in the possession, custody, or control of Mr. Levien, who resides in this District—and are therefore beyond the compulsory process of the Israeli courts. The District Court of Tel Aviv-Yafo has no mechanism to compel Mr. Levien to produce documents located at his residence or office in the United States. (*See* Lande Declaration, ¶¶ 14, 17, 21-29.) Accordingly, this factor plainly favors granting the Application.

***2. Israeli Courts Are Receptive to U.S. Judicial Assistance***

**58.** The second *Intel* factor considers the nature of the foreign tribunal and its receptiveness to the requested discovery. Absent authoritative proof that a foreign tribunal would reject evidence obtained with the aid of Section 1782, this factor weighs in favor of granting the petition. *See Euromepa*, 51 F.3d at 1102.

**59.** Israel is a common-law-influenced democratic state with an independent judiciary and robust procedural rules. Israeli courts have regularly received and considered evidence obtained through international judicial assistance mechanisms, including evidence obtained pursuant to 28 U.S.C. § 1782. *See, e.g.*, *In re Hallmark Capital Corp.*, 534 F. Supp. 2d 951 (D. Minn. 2007) (holding that a non-party to the Israeli proceeding located in the United States was required to respond to the petitioner's § 1782 requests and that the discovery sought by petitioner was not unduly broad or burdensome); *In re Application of RSM Production Corp. v. Noble Energy, Inc.*, 95 F. Supp. 3d 899 (S.D. Tex. 2016) (holding that discovery in the United States was appropriate and would aid the Israeli proceedings at issue). Moreover, VRCG's Israeli counsel has confirmed that the Israeli courts would be receptive to documents and evidence obtained through this Court's assistance. (*See* Lande Declaration, ¶¶ 21-29.)

**60.** There is, furthermore, no authoritative declaration from any branch of the Israeli government or court system suggesting that evidence obtained through § 1782 would be unwelcome or inadmissible in Israeli courts. (*See* Lande Declaration, ¶ 23.) Accordingly, the second *Intel* factor strongly favors granting the Application. *See In re Catalyst Managerial Servs. DMCC*, 680 F. App'x 37, 41 (2d Cir. 2017).

***3. The Application Does Not Circumvent Foreign Proof-Gathering Restrictions***

**61.** The third *Intel* factor considers whether the foreign jurisdiction has proof-gathering restrictions that might be improperly circumvented if the discovery request is granted. *See Intel*, 542 U.S. at 264-65.

**62.** Israel has no proof-gathering restrictions that would be circumvented by the discovery sought here. Israeli procedural law provides for discovery and document production in civil proceedings. The issue is not one of Israeli law restricting the evidence, but of Israeli courts

lacking extraterritorial jurisdiction to compel the production of documents held by persons in the United States. It is precisely this gap that § 1782 was designed to fill. (*See* Lande Declaration, ¶¶ 16-29.)

**63.** VRCG's Israeli counsel has also confirmed that obtaining the information sought does not circumvent the proof-gathering restrictions or other policies of the Israeli courts. (*See* Lande Declaration, ¶¶ 21-29.) Accordingly, the third *Intel* factor weighs in favor of granting VRCG's Application.

***4. The Discovery Sought Is Narrowly Tailored and Not Unduly Burdensome***

**64.** The fourth *Intel* factor concerns whether the discovery sought is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65. That is hardly a concern here, as less than ten (10) straightforward document requests have been propounded in connection with the proposed subpoena—a quite small number of requests for a case involving the preeminent professional basketball club in Israel that is worth hundreds of millions of dollars. (*See* Lande Declaration, ¶ 26-29.)

**65.** VRCG seeks only document production and a single deposition from the Respondent. The document requests, set forth below, are carefully targeted to the specific transactions and events at issue in the Israeli Proceeding. They seek categories of documents that the Respondent would be expected to have readily available, including: communications regarding the acquisition of Club shares; documents relating to the formation and ownership of Endvr-MTA; documents relating to the Selling Notice and the proposed transactions; and communications with the other shareholders and their representatives.

**66.** Moreover, the events at issue are recent—occurring between May and September 2026—and the Respondent, Mr. Levien, was a central participant in the transactions. The

requests are limited in scope and do not seek privileged information. They go directly to the heart of the matters at issue in the Israeli Proceeding.

**67.** Specifically, VRCG seeks the following categories of documents from the Respondent, Mr. Levien:

> **Request No. 1:** All documents concerning the shares of Maccabi, including any documents relating to acquisition or transfer of Maccabi shares or any financing thereof—including communications with Mr. Oudi Recanati, Mr. Shai Recanati, Mr. Meir Hadar, Mr. Shimon Mizrahi, or any representative of Naftali, Newco, or their affiliates.
>
> **Request No. 2:** All documents or communications relating to the treatment of, or engagement with, other shareholders of Maccabi.
>
> **Request No. 3:** All documents relating to the notice to shareholders issued by Naftali on August 7, 2026 (the "Notice").
>
> **Request No. 4:** All documents relating to the proposed sale by Naftali and Newco of 20,190 shares and 17,498 shares, respectively, of Maccabi to ENDVR-MTA LLC.
>
> **Request No. 5:** All documents relating to any meetings of the Board of Directors of Maccabi.
>
> **Request No. 6:** All communications with external advisers, consultants, and third-party service providers having to do with the Relevant Matters or the foregoing events.
>
> **Request No. 7:** All documents relating to the incorporation and ownership of ENDVR-MTA LLC.
>
> **Request No. 8:** All documents relating to any transactions between the Respondent and/or ENDVR-MTA LLC and Naftali or their affiliates (including documents relating to the terms of the transaction referred to in the Notice).
>
> **Request No. 9:** Any litigation hold or preservation notices issued to affiliates, advisers, consultants, and third-party service providers, and records of steps taken in response.

**68.** These document requests are reasonable and proportionate. They seek information directly relevant to the Israeli Proceedings and do not impose an undue burden on the

Respondents. (*See* Lande Declaration, ¶¶ 26-29.) Moreover, any deposition would be restricted to such issues as well. Thus, the fourth *Intel* factor certainly weighs in favor of granting VRCG's Application.

## CONCLUSION

In light of the foregoing, Petitioner VRCG respectfully requests that this Court grant VRCG's Application in its entirety and enter the Proposed Order authorizing Petitioner's counsel to issue a short subpoena upon Mr. Levien, pursuant to Federal Rule of Civil Procedure 45, compelling the production of documents and a deposition as described herein, for use in connection with the Israeli Proceeding described above.

Dated: September 29, 2026

BAILEY & GLASSER LLP

*/s Brian A. Glasser*

Brian A. Glasser
BAILEY & GLASSER LLP
1055 Thomas Jefferson St., NW
Suite 540
Washington, DC 20007
Telephone: 202-463-2101
Facsimile: 202-463-2103
bglasser@baileyglasser.com

*Attorneys for Petitioner*