# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re Application of<br>**VR CAPITAL GROUP LTD.**<br>for an Order to Conduct Discovery<br>for Use in Foreign Proceedings.<br><br>Petitioner. | )<br>)<br>)<br>)<br>)<br>)<br>) | Misc. Action No. ____________ |

**DECLARATION OF RICHARD DEITZ IN SUPPORT OF APPLICATION FOR DISCOVERY IN AID OF FOREIGN LITIGATION PURSUANT TO 28 U.S.C. § 1782**

I, Richard Deitz, hereby make this Declaration.

**1.** I am over the age of 21 and am otherwise competent to make this Declaration.

**Introduction**

**2.** This Declaration is being made and offered in support of the Application (the "**Application**") of Petitioner VR Capital Group Ltd. ("**VRCG**" or the "**Petitioner**") for an order pursuant to 28 U.S.C. § 1782 authorizing the attorneys of VRCG to issue a subpoena, pursuant to Federal Rule of Civil Procedure 45, upon Respondent Jason Levien ("**Mr. Levien**" or the "**Respondent**"), compelling the Respondent to produce documents and provide a deposition in the District of Columbia for the use of such evidence in the foreign legal proceeding styled *VR Capital Group Ltd. v. Endvr-MTA LLC, et al.*, Case No. 59352-09-26, currently pending in the District Court of Tel Aviv-Yafo, Israel (the "**Israeli Proceeding**").

**3.** The details of the Israeli Proceeding are discussed in greater depth below.

## **Background Information**

**4.** I am the founder and president of VRCG, which is a company incorporated under the laws of the Cayman Islands with its registered office at One Nexus Way, Camana Bay, Grand Cayman Cayman Islands KY1-9005, Cayman Islands .

**5.** VRCG holds approximately 17.5% of the shares of Maccabi Tel Aviv Basketball Club (1995) Ltd. ("**Maccabi**" or the "**Club**"), a professional basketball club based in Tel Aviv, Israel.

**6.** I serve as VRCG's representative on the Club's board of directors, and I have direct, first-hand knowledge of the events described in the Application, including without limitation the board of directors meeting of September 4, 2026, the Respondents' involvement in the scheme to circumvent VRCG's contractual rights, and the concealment of material information from VRCG.

**7.** On June 9, 2013, VRCG, Naftali Sh.Sh. Investments Ltd. ("**Naftali**"), Newco Sport Ltd. ("**Newco**"), Fedanco Sport Ltd. ("**Fedanco**"), and Maccabi Tel Aviv Holdings LLC ("**MTAH**") entered into a Shareholders Agreement governing the Club (the "**Shareholders Agreement**" or the "**Agreement**"). (*See* Ex. 1 (the Shareholders Agreement).)

**8.** Pursuant to the Shareholders Agreement, a shareholder such as VRCG has certain contractual rights which safeguard its ownership interest in Maccabi, including without limitation a Right of First Refusal to purchase an existing shareholder's shares of Maccabi upon an intended sale event, prior to a selling shareholder's right to sell shares to a third party. (*See id.*)

**9.** The Shareholders Agreement contains a comprehensive mechanism governing the transfer of shares in the Club, including such Right of First Refusal pursuant to Section 15.4, general restrictions on share transfers pursuant to Section 15.1, and a limited exception in

Section 15.9 permitting transfers of up to 7.5% in the aggregate of the Club's share capital without triggering a shareholder's Right of First Refusal. (*See id.*)

**10.** These provisions were designed to, among other things, protect existing shareholders from the entry of unwanted third parties into the Club's ownership structure. (*See id.*)

**11.** In the spring and summer of 2026, Respondent Mr. Levien secretly coordinated with shareholders Naftali and Newco to engineer a series of transactions designed to circumvent VRCG's contractual rights and install Mr. Levien's entity, Endvr-MTA LLC ("**Endvr-MTA**"), a third party, as a shareholder in the Club.

**12.** The scheme involved a classic "back-to-back" transaction apparently brokered by Mr. Guy Harel ("**Mr. Harel**") — a citizen of Israel and a defendant in the Israeli Proceeding — in connection with Mr. Levien.

**13.** Pursuant to this back-to-back transaction, Naftali purchased Fedanco's approximately 29% stake in the Club for $50 million, only to immediately attempt to flip the same block to Endvr-MTA for the same price—all while concealing the terms of the deal and identities of the real buyers from VRCG.

**14.** Despite the efforts of Mr. Levien and others to conceal key information regarding the terms of the proposed transaction from VRCG, VRCG exercised its Right of First Refusal on September 4, 2026, with respect to this transaction. (*See* Ex. 2 (VRCG's Exercise of Right of First Refusal).)

**15.** Following that, and in an effort to circumvent VRCG's rights and its exercise of its Right of First Refusal, Naftali, Newco, and Mr. Levien pivoted to yet another scheme: an artificially "split" transfer of 7.5% of Naftali's shares to Endvr-MTA, rushed through on the

night of September 5, 2026, followed by a notice that purported to treat Endvr-MTA as an existing shareholder entitled to participate in the distribution of the very block of shares that had been improperly "offered" to it as an outside, third-party purchaser (the "**Distribution Notice**") (*See* Ex. 3 (the Distribution Notice).

**16.** These improper maneuvers were all designed to gut VRCG's exercise notice and fundamentally reshape the Club's ownership structure in violation of the Shareholder's Agreement and VRCG's legal rights.

**17.** The Israeli Proceeding described above ensued. (*See* Ex. 4 (the Israeli Statement of Claim in Hebrew with English Translation.)

**Additional Details Regarding the Shareholders Agreement**

**18.** The Shareholders Agreement contains a comprehensive and binding arrangement regarding the sale, transfer, or assignment of shares and related rights in the Club. The arrangement is intended to ensure, among other things, that no third party enters the Club's ownership structure without the existing shareholders having the opportunity to examine the proposed transaction and exercise their contractual rights, including their Rights of First Refusal. (*See* Ex. 1.)

**19.** Section 15.1 of the Agreement provides that a shareholder is not entitled to transfer its shares to a third party except subject to the provisions of the Agreement and with the prior written approval of the board of directors. A transfer to a party that is not a "permitted transferee" is subject, as a general rule, to the Right of First Refusal mechanism set forth in Section 15.4 of the Agreement. (*See* Ex. 1, ¶¶ 15.1 and 15.4.)

**20.** Section 15.4 of the Agreement grants the other shareholders a prior right to purchase shares that a shareholder seeks to transfer to a third party. For this purpose, Section

15.4.1 requires the selling shareholder to provide the other shareholders with a "Selling Notice" that includes: (a) the identity of the third party; (b) the number of shares and rights offered; (c) the consideration; and (d) "all other terms and conditions" of the sale. Section 15.4.2 provides that within 30 days of delivery of the Selling Notice, any other shareholder may deliver a "Buying Notice" with respect to all the rights offered. (*See* Ex. 1, ¶¶ 15.45.1-15.4.2.)

**21.** Section 15.9 of the Agreement establishes a limited exception to the Right of First Refusal mechanism, under which Section 15.4 does not apply to a sale or transfer of up to 7.5% ***in the aggregate*** of the share capital, transferred to a third party by "one or more" of shareholders Naftali, Newco, and/or Fedanco (formerly). (*See* Ex. 1, ¶¶ 15.4 and 15.9.)

**The Back-to-Back Transaction and Concealment of Material Information**

**22.** During 2026, a dispute arose among the Club's shareholders concerning the ownership structure and future direction of the Club. In May 2026, Fedanco, which held approximately 29% of the Club's shares, announced a planned change of control, which could have led to the entry of a new party into the Club's ownership.

**23.** Naftali objected to the entry of the outside party proposed by Fedanco, and announced its intention, pursuant to the Shareholder's Agreement, to exercise its Right of First Refusal over Fedanco's shares on July 7, 2026. However, I believe that Naftali's objection and action was not motivated by a desire to protect the Club or the existing shareholders, but rather was designed to protect the interests of a third party, Respondent Jason Levien. In fact, at the very same time Naftali was blocking Fedanco's proposed change of control, Naftali and Newco were secretly conducting advanced negotiations with Mr. Levien and Mr. Harel, a defendant in the Israeli Proceeding, regarding the entry of Mr. Levien's entity, Endvr-MTA, into the Club's

ownership structure. Mr. Harel served as the intermediary or "broker" who facilitated the contacts between Mr. Levien and Naftali/Newco.

**24.** On July 6, 2026—just ***one day*** before Naftali announced its exercise of the Right of First Refusal over Fedanco's shares—Endvr-MTA LLC was formed in the State of Delaware.

**25.** On July 7, 2026, Naftali announced its intention to exercise its Right of First Refusal over Fedanco's shares, and on July 15, 2026, Naftali completed the purchase of all of Fedanco's holdings in the Club (approximately 77,998 shares constituting approximately 29% of the share capital) for a consideration of approximately $50 million.

**26.** Only three weeks later, on August 7, 2026, Naftali issued a "Selling Notice" to the shareholders announcing its intention to sell the *very same block* of 77,998 shares to Endvr-MTA for the *same price* of approximately $50 million. (*See* Ex. 5 (the Selling Notice).) This was a classic back-to-back transaction—the purchase from Fedanco was merely a vehicle for the transfer of shares to Endvr-MTA, a third party who had no right to purchase shares in the absence of VRCG being allowed to exercise its Right of First Refusal.

**27.** The Selling Notice omitted material information required by Section 15.4.1 of the Shareholders Agreement. Among other things, Naftali failed to disclose: the identity of the beneficial owners behind Endvr-MTA; the full terms of the transaction, including ancillary arrangements; payment and completion terms; sources of financing; securities; and undertakings regarding management and voting rights. VRCG demanded that Naftali complete shareholders the required information, but Naftali refused, while simultaneously insisting that the 30-day period for exercising the Right of First Refusal was running. (*See* Ex. 6 (VRCG Correspondence to Naftali and Shareholders).)

**Mr. Recanati's Admissions Regarding the Respondents' Role**

**28.** The coordinated nature of the scheme received dramatic confirmation through a recorded conversation between Mr. Udi Recanati ("**Mr. Recanati**"), one of Naftali's owners and its representative on the Club's board of directors, and a third-party Club fan—a transcribed copy of which is attached hereto. (*See* Ex. 7 (Transcript of Recorded Conversation) In this conversation, Mr. Recanati made a series of material admissions, including:

(a) That Mr. Levien heads a "group of investors" behind Endvr-MTA;

(b) That Naftali conducted "very in-depth" due diligence on Mr. Levien and the group of investors before the transactions;

(c) That Mr. Levien is "100% with us" and that there is an intended future joint voting arrangement between Naftali, Newco, and Mr. Levien;

(d) That the purchase of Fedanco's shares was not intended to increase Naftali's holdings, but rather served as a vehicle for the transfer to non-shareholder Mr. Levien;

(e) That Mr. Levien committed to inject an additional $10 million per year into the Club beyond the budget; and

(f) That Mr. Harel mediated the contacts between Mr. Levien and Naftali/Newco.

(*See id.*)

**29.** These admissions were not disclosed in the Selling Notice, as required by the Shareholder's Agreement, and were actively concealed from VRCG, notwithstanding VRCG's repeated demands for the information. (*See* Ex. 8 (Repeated Demands for Information).)

**VRCG's Exercise of the Right of First Refusal and the September 5 Scheme**

**30.** Despite the concealment of information, on September 4, 2026—two days before the deadline—VRCG, pursuant to the Shareholders Agreement, exercised its Right of First Refusal with respect to all the shares offered for sale by Naftali. (*See* Ex. 2.) Had VRCG's

exercise been honored, its aggregate shareholding in the Club would have reached approximately 46.5% of the share capital.

**31.** However, instead of honoring VRCG's rights, the Respondent Mr. Levien, together with Naftali and Newco, promoted yet another scheme to circumvent the Agreement. On August 31, 2026, Naftali and Newco convened a board of directors meeting for September 4, 2026. (*See* Ex. 9 (Notice Convening Meeting of the Board of Directors).) The sole agenda item was the approval of a ***joint*** transaction to transfer approximately 14% of the Club's shares to Endvr-MTA—7.5% from Naftali and 6.5% from Newco—which Naftali and Newco sought to present as falling under the Section 15.9 exception in the Shareholders Agreement. (*See id.*)

**32.** At the board meeting, as VRCG's representative, I strongly objected, clarifying that Section 15.9 permits transfers of only up to 7.5% ***in the aggregate***, not 7.5% per shareholder. I further noted that given the personal interest of most board members, the transaction required the approval of the general meeting of shareholders.

**33.** When I appropriately questioned the validity of the attempted 14% transaction, the plan was "changed" during the meeting. The single transaction was artificially "split," and only the transfer of 7.5% of Naftali's shares to Endvr-MTA was put to a vote—a transaction that had not been on the original agenda. The discussion on the Newco share transaction was postponed.

**34.** Matters reached their peak on the night of Saturday, September 5, 2026. In rapid succession and with unusual haste, a series of "notices" and "decisions" were sent to VRCG:

**34.1.** Naftali issued a notice claiming that the transfer of 7.5% of its shares to Endvr-MTA had been lawfully executed and that the previously convened general meeting was no longer necessary (the "**Transfer Notice**") (*See* Ex. 10 (Transfer Notice).)

**34.2.** Newco issued a notice purporting to exercise a priority right to purchase 53,770 of the remaining shares—on the erroneous assumption that Naftali's shareholding had already decreased by 7.5% due to the supposed transfer to Endvr-MTA (the "**Exercise Notice**") (*See* Ex. 11 (Exercise Notice).)

**34.3.** Naftali issued the "Distribution Notice," purporting to treat Endvr-MTA as an *existing shareholder* entitled to participate in the distribution of the 29% block—the very block that had been offered for sale to Endvr-MTA as a third party. The practical effect was to gut VRCG's exercise notice, reduce VRCG's allocation from the full block to a mere fraction, and manufacture a shareholding for Endvr-MTA of over 8%. (*See* Ex. 3).

**35.** This coordinated series of actions—carried out in concert with the Respondent Jason Levien—was designed to create an irreversible "new reality" in the Club's ownership structure, to the detriment of VRCG and in violation of the Shareholders Agreement.

**The Israeli Proceeding**

**36.** Barnea Jaffa Lande & Co., and in particular Adv. Zohar Lande, Adv. Eyal Nachshon, Adv. Shay Bello, and Adv. Shani Tsur, serve as counsel of record for VRCG in the Israeli Proceeding.

**37.** VRCG commenced the Israeli Proceeding against ENDVR-MTA LLC and Mr. Harel in the District Court of Tel Aviv-Yafo. (*See* Ex. 4.) Mr. Harel is a resident of Israel.

**38.** The Israeli Proceeding asserts claims for inducing breach of contract under Section 62(a) of the Israeli Torts Ordinance, unjust enrichment, and declaratory relief. (*See id.*)

**39.** The claims in the Israeli Proceeding arise from the same coordinated scheme described above: the back-to-back transactions, the concealment of material information, the

artificial "splitting" of the 14% transaction, and the rushed Transfer Notice and Distribution Notice of September 5, 2026. In the Israeli Proceeding, VRCG seeks, *inter alia*, a declaratory judgment that the share transfers and actions described above were carried out in breach of the Shareholders Agreement and in violation of VRCG's rights, as well as monetary relief for damages caused by the Respondents' tortious conduct. (*See id.*)

**The Proposed Discovery in Relation to the Israeli Proceedings**

**40.** Respondent Jason Levien does not reside in Israel. Mr. Levien resides in Washington, D.C. where he is the Co-Chairman and CEO of Major League Soccer team DC United.

**41.** The documents sought from the Respondent, Mr. Levien, go to the very heart of the Israeli Proceeding. Mr. Levien was one of the architects and intermediaries of the scheme to circumvent VRCG's contractual rights in relation to this prestigious basketball club. It is my belief that Mr. Levien possesses unique and critical evidence regarding: the formation and beneficial ownership of his entity, Endvr-MTA; the terms, conditions, and side arrangements negotiated with Naftali and Newco; the financing of the transactions; and the voting and management arrangements that were concealed from VRCG in violation of the Shareholders Agreement.

**42.** I am aware that VRCG seeks the following categories of documents from the Respondent, Mr. Levien:

> **Request No. 1:** All documents concerning the shares of Maccabi, including any documents relating to acquisition or transfer of Maccabi shares or any financing thereof—including communications with Mr. Udi Recanati, Mr. Shai Recanati, Mr. Meir Hadar, Mr. Shimon Mizrahi, or any representative of Naftali, Newco, or their affiliates.
>
> **Request No. 2:** All documents or communications relating to the treatment of, or engagement with, other shareholders of Maccabi.

**Request No. 3:** All documents relating to the notice to shareholders issued by Naftali on August 7, 2026 (the "Notice").

**Request No. 4:** All documents relating to the proposed sale by Naftali and Newco of 20,190 shares and 17,498 shares, respectively, of Maccabi to Endvr-MTA LLC.

**Request No. 5:** All documents relating to any meetings of the Board of Directors of Maccabi.

**Request No. 6:** All communications with external advisers, consultants, and third-party service providers having to do with the Relevant Matters or the foregoing events.

**Request No. 7:** All documents relating to the incorporation and ownership of Endvr-MTA LLC.

**Request No. 8:** All documents relating to any transactions between the Respondent and/or Endvr-MTA LLC and Naftali or their affiliates (including documents relating to the terms of the transaction referred to in the Notice).

**Request No. 9:** Any litigation hold or preservation notices issued to affiliates, advisers, consultants, and third-party service providers, and records of steps taken in response.

**43.** I believe that these document requests seek information directly relevant to the Israeli Proceeding.

**44.** I am also aware that VRCG seeks the deposition of Mr. Levien regarding the document requests and matters directly relevant to the Israeli Proceeding.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: 29 September 2026

Richard Deitz